UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12148-RGS

MARY KATHRYN O'BRIEN

v.

SELECT PORTFOLIO SERVICING, INC., and DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE FOR WAMU MORTGAGE
PASS-THROUGH CERTIFICATES SERIES 2005-AR11 TRUST

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

January 18, 2019

STEARNS, D.J.

Mary Kathryn O'Brien brought this lawsuit in Essex Superior Court against Select Portfolio Servicing, Inc. (SPS), and Deutsche Bank National Trust Company.[1] O'Brien alleges that defendants' efforts to enforce the mortgage on her property are predatory because they knew at the inception of the loan that she would never be able to repay it. The Amended Complaint sets out two claims: unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A (Count I), and unfair debt collection practices in violation of

---

[1] Deutsche Bank is a Trustee, acting on behalf of the holders of the Washington Mutual (WaMu) Mortgage Pass-Through Certificates Series 2005-AR11 Trust.

ch. 93, § 49. Defendants removed the case to the federal district court on diversity grounds and now move to dismiss both Counts of the Amended Complaint for failure to state a claim.[2] For the reasons to be explained, defendants' motion to dismiss will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to O'Brien as the nonmoving party, are as follows. On January 10, 2002, O'Brien purchased a residence at 101-103 High Road in Newbury, Massachusetts. On March 4, 2005, she refinanced the home with an $825,000 loan from WaMu. She alleges numerous irregularities in the formation of the mortgage contract. According to the Amended Complaint, the mortgage broker, George Manemanus, never requested financial documentation, falsified O'Brien's income on the mortgage application, and charged her an exorbitant $560 processing fee and $8,250 "Yield Spread Premium."[3] Am. Compl. ¶¶ 19-20,

---

[2] O'Brien is a Massachusetts resident. Deutsche Bank is a national trust company with a principal place of business in California. SPS is a Utah corporation with a principal place of business in Utah. Am. Compl. ¶¶ 4-6.

[3] "Yield spread premiums are payments made by lending institutions to mortgage brokers based on the rate of interest charged on a borrower's loan. The higher the interest rate, the larger the yield spread premium payment." *Darden v. Noyes*, 2010 WL 4456992, at *1 n.3 (Mass. Super. 2010), quoting Howell E. Jackson & Laurie Burlingame, *Kickbacks or Compensation: The Case of Yield Spread Premiums*, 12 Stan. J. L. Bus. & Fin. 289, 289 (2007).

26-27. As a result, she was unable to make her mortgage payments "from the outset," even before the interest rate ballooned. *Id.* ¶ 24.[4]

O'Brien defaulted on the mortgage in September of 2008. Around that same time, WaMu failed, and the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver. O'Brien's mortgage was subsequently transferred by the FDIC to JPMorgan Chase Bank and then assigned, on February 24, 2009, to Deutsche Bank.

In August of 2010, O'Brien filed for Chapter 13 bankruptcy protection to avoid a pending foreclosure sale. That action was dismissed because she did not make or could not afford the plan payments. In November of 2017, she filed again for bankruptcy protection, but the case was similarly dismissed. O'Brien remains in default.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the

---

[4] While her initial monthly mortgage payment, including taxes and insurance, was $3,330.33, Am. Compl. ¶ 22, her average monthly income at the time was only $2,506. *Id.* ¶ 27. And over time, the interest rate increased from 4.5% to 7.5%. *Id.* ¶ 28.

court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

O'Brien alleges in Count I that defendants "committed unfair and deceptive practices by enforcing a mortgage" that was unlawful from its inception. Am. Compl. ¶ 54; *see Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d 51, 56 (1st Cir. 2011) ("Chapter 93A prohibits 'the origination of a home mortgage loan that the lender should recognize at the outset the borrower is not likely to be able to repay.'"), quoting *Com. v. Fremont Inv. & Loan*, 452 Mass. 733, 749 (2008).

Defendants first contend that O'Brien's origination claims are jurisdictionally barred because they arose out of her original mortgage with the failed WaMu. Thus, defendants argue that her only avenue of relief,

4

which she did not pursue, was under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA).[5] *See Demelo*, 727 F.3d at 122 ("Since the plaintiffs' consumer protection claims arise out of and relate exclusively to pre-receivership acts or omissions of the failed financial institution . . . , the plaintiffs' eschewal of the claims-processing regime renders those claims nugatory."). O'Brien responds by arguing that FIRREA does not preclude her from "rais[ing] defensive origination-related claims for *equitable* relief." Opp'n (Dkt # 17) at 6 (emphasis added). I agree.

"[T]he FIRREA exhaustion requirement applies to claims against the bank and not to claims by the bank against those indebted to it." *Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 671 (1st Cir. 1999). A debtor like O'Brien can therefore "await an attempt by the receiver to collect and then assert any available defenses." *Id.* Because O'Brien's Chapter 93A claims are in the nature of equitable defenses, they are not precluded by FIRREA.[6] *See id.* at

---

[5] The FDIC's receivership of WaMu occurred under FIRREA, which sets forth a mandatory "detailed claims-processing regime" wherein "[t]he failure to pursue an administrative claim is fatal." *Demelo v. U.S. Bank Nat. Ass'n*, 727 F.3d 117, 121-122 (1st Cir. 2013). The Act precludes "any claim relating to any act or omission of [the failed] institution or the [FDIC] as receiver." *Id.* at 122, quoting 12 U.S.C. § 1821(d)(13)(D).

[6] Defendants also argue that Deutsche Bank, as an assignee, cannot be held liable for the origination-related claims. *See Azevedo v. U.S. Bank N.A.*, 167 F. Supp. 3d 166, 170 (D. Mass. 2016) ("Defendants are not liable under Chapter 93A for Argent's conduct merely by virtue of their status as assignees

671-672 (concluding that "FIRREA poses no bar" to plaintiffs' "action to enjoin the foreclosure," which "is merely an effort to assert the defense preemptively and not to recover money or property from the bank"); *Proal v. JPMorgan Chase Bank, N.A.*, 641 F. App'x 9, 11 n.2 (1st Cir. 2016) (remanding "to determine which of [plaintiff's] equitable claims remain in force and what sort of relief, if any, she may now seek under Massachusetts law in light of the fact that the challenged foreclosure has already occurred").

Defendants next maintain that O'Brien's Chapter 93A claim is time-barred because the statute of limitations ran on March 4, 2009, four years after the loan closed and over nine years before O'Brien initiated this lawsuit.[7] *See Da Silva v. U.S. Bank, N.A.*, 885 F. Supp. 2d 500, 504 (D. Mass. 2012) ("A violation involving an issuance of a loan begins to accrue from the

---

of the Mortgage and successors in interest to Argent."). O'Brien takes a differing view. *See Serra v. Quantum Servicing, Corp.*, 747 F.3d 37, 41-42 (1st Cir. 2014) ("'The common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could have raised against the assignor.'"), quoting *Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 545 (1989). Defendants are half-right in the sense that O'Brien is foreclosed from seeking money damages from Deutsche Bank; she can, however, seek equitable relief. *See Drakopoulos v. U.S. Bank Nat'l Ass'n*, 465 Mass. 775, 787 n.16 (2013) ("Even where the unfair or deceptive acts were committed wholly by an assignor, . . . assignees may be liable under G.L. c. 93A for equitable remedies such as cancellation of a debt or rescission of a contract.") (citation omitted).

[7] The statute of limitations for Chapter 93A claims is four years. Mass. Gen. Laws ch. 260, § 5A.

moment the parties entered into the loan."). In response, O'Brien argues that "defendant's ongoing attempts to collect a debt" have had the effect of tolling the statute of limitations, thus preserving her action under Chapter 93A. Opp'n (Dkt # 17) at 11. Specifically, O'Brien contends that Chapter 93A, which provides a private right of action to those "who [have] been injured by another person's *use* or employment of any [unfair or deceptive] method, act or practice," Mass. Gen. Laws Ann. ch. 93A, § 9 (emphasis added), reaches defendants' *use* of the predatory loan as a vehicle for collecting payment. *See* Black's Law Dictionary (10th ed. 2014) (defining "use" as "[t]he application or employment of something"); *State v. Custom Pools*, 150 Vt. 533, 536 (1988) (interpreting "use" in Vermont's analogous consumer protection act as "'[t]o make use of, to convert to one's service, to avail one's self of, to employ'"), quoting Black's Law Dictionary (5th ed. 1979).

O'Brien's tolling argument, while creative, fails for the following reasons. The essence of O'Brien's Chapter 93A claim is that the loan was predatory because it was unaffordable from the *outset.* In other words, O'Brien has known since March 4, 2005, when she closed on the mortgage, that she could not afford the monthly payments. *See Latson v. Plaza Home Mortg., Inc.*, 708 F.3d 324, 327 (1st Cir. 2013) ("Here the interest terms and the implications of their burdens were apparent when the Latsons signed and

7

got their money, a conclusion underscored by the Massachusetts rule that the terms of written agreements are binding whether or not their signatories actually read them."). Nonetheless, she did not challenge the loan as predatory until the filing of this lawsuit on September 13, 2018, over thirteen years after taking the loan. *See Azevedo*, 167 F. Supp. 3d at 170 ("Plaintiff's Chapter 93A predatory lending claim based on the Mortgage agreement executed June 10, 2005 must be dismissed as time-barred."). The failure to pursue the claim was not for want of attention to the mortgage. During the thirteen years that followed the origination of the mortgage, O'Brien had defaulted, pursued a loan modification, filed twice for bankruptcy protection, and hired an attorney in August of 2009 to, among other things, file an adversary complaint against Deutsche Bank (on September 7, 2011). O'Brien's Chapter 93A claim (Count I) is, therefore, barred by the four-year statute of limitations.[8] *See In re Sheedy*, 801 F.3d 12, 21 (1st Cir. 2015) ("[A]ny claim under Chapter 93A is time-barred because Sheedy's four-year limitations period began when she entered into the loan in 2004."); *cf. Tyler*

---

[8] Although O'Brien is correct that she can seek equitable relief, as discussed previously, her Chapter 93A claim is still subject to the four-year statute of limitations. *See In re Sheedy*, 801 F.3d at 21-23 (rejecting the debtor's "argument that her request for rescission in recoupment is immune from any limitations period because the equitable remedy of recoupment can be raised defensively at any time").

*v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013) ("[T]he violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself.").[9]

Turning to Count II, O'Brien alleges that defendants attempted to collect her mortgage "in an unfair, deceptive, and unreasonable manner," in violation of Mass. Gen. Laws ch. 93, § 49. Am. Compl. ¶ 61. However, as defendants point out, § 49 does not provide a private right of action. *See O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014) ("Plaintiffs fail to assert any right to relief under the Massachusetts debt collection statute as § 49 itself provides no private right of action."); *Kassner v. Chase Home Fin., LLC*, 2012 WL 260392, at *9 (D. Mass. 2012) ("Plaintiff brings related 'debt collection' claims under Mass. Gen. L. c. 93, § 49 . . . and

---

[9] Having so concluded, the court need not reach defendants' additional argument that O'Brien is not entitled to the specific equitable relief she seeks: rescission and reformation. *See In re Creutz*, 2018 WL 2733942, at *5 (Bankr. D. Mass. 2018) ("[T]he complaint fails to provide any legal basis to reform the note or mortgage. There is no allegation of a mutual mistake, which is a prerequisite to the reformation of a contract."); *Hooley v. Bank of New York Mellon*, 2016 WL 8710450, at *3 (D. Mass. 2016) ("Plaintiffs have not alleged a mutual mistake between themselves and CHMC regarding the 2003 refinancing agreement and they are therefore not entitled to reform their mortgage.").

9

209 CMR 18.00 . . ., which do not provide private rights of action.").[10] Count II is, therefore, dependent on, and fails with, O'Brien's Chapter 93A claim (Count I).

## ORDER

For the foregoing reasons, defendants' motion to dismiss is ALLOWED. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[10] O'Brien argues that Mass. Gen. Laws ch. 93, § 12, which states that "[a]ny person who shall be injured in his business or property by reason of a violation of the provisions of this chapter may sue therefor and recover the actual damages sustained," provides a private right of action for section 49 claims. She is unable to cite any state or federal case that supports her interpretation.